Case 2:12-cv-01545-RCJ-CWH Document 93 Filed 09/03/14 Page 1 of 12
Case 1:13-cv-01409-RCJ-WH Document 93 Filed 09/03/14 Page 1 of 12

E-FILED
Wednesday, 20 August, 2014 05:20:39 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ESCO CORPORATION, and ESCO CANADA, LTD., | ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | No. 1:13-cv-01409-SLD-JEH |
| CASHMAN EQUIPMENT COMPANY, CATERPILLAR GLOBAL MINING LLC, CATERPILLAR INC., RAPTOR MINING PRODUCTS (USA) INC., and RAPTOR MINING PRODUCTS, INC., | ) ) ) ) ) ) ) | |
| Defendants/Counterclaim Plaintiffs. | ) | |

## ORDER

This case involves patent infringement claims by Plaintiffs ESCO Corporation ("ESCO Corp.") and ESCO Canada, Ltd. ("ESCO Canada") against Defendants Caterpillar Inc. and Caterpillar Global Mining, LLC ("Caterpillar Global"), Raptor Mining Products (USA) Inc. ("Raptor USA") and Raptor Mining Products, Inc. ("Raptor Mining"), and Cashman Equipment Company ("Cashman"), and related counterclaims. Pending before the Court is Plaintiffs' Motion for Retransfer to the District of Nevada. Plaintiffs argue for retransfer on the basis that the Nevada court did not have the power to transfer the consolidated case to this District: this Court, Plaintiffs argue, lacked personal jurisdiction over the Raptor Defendants and Cashman at the time the ESCO parties filed suit in Nevada. The Court agrees with respect to Cashman. Therefore, the Court GRANTS Plaintiffs' Motion for Retransfer.

1

## BACKGROUND

This case began in January, 2012, when Caterpillar, Inc. sued ESCO Corp. in this District for breach of contract, injunctive relief, and a declaratory judgment of non-infringement. *Caterpillar Inc. v. Esco Corp.*, 909 F. Supp. 2d 1026 (C.D. Ill. 2012). In August, 2012, the ESCO Plaintiffs sued all of the above-captioned Defendants in the District of Nevada. *ESCO Corp. v. Cashman Equipment Co.*, No. 12-cv-01545-RCJ-NJK (D. Nev. Aug. 29, 2012). After dismissing the other counts, Judge Joe Billy McDade transferred Caterpillar, Inc.'s declaratory judgment claims to Nevada on December 18, 2012. *Caterpillar*, 909 F. Supp. 2d at 1028. Judge McDade found, pursuant to 28 U.S.C. § 1404(a), that the interest of justice factor weighed heavily in favor of transfer, in part because consolidation with the Nevada suit would save judicial resources. As anticipated, the cases were consolidated by the Nevada court. On August 30, 2013, Chief Judge Robert C. Jones of the District of Nevada transferred the consolidated case to the Central District of Illinois under 28 U.S.C. § 1404(a).

ESCO Corp. is an Oregon corporation that designs, manufactures, and sells mining, infrastructure, and industrial parts and tools. Am. Compl. ¶¶ 6 & 13, ECF No. 27. ESCO Canada is a Canadian corporation engaged in similar endeavors in Canada. *Id.* ¶¶ 7 & 15. Caterpillar Global is a Delaware corporation with its principal place of business in Wisconsin. *Id.* ¶ 9. Caterpillar, Inc., is a Delaware corporation with its principal place of business in Illinois. *Id.* ¶ 10. Cashman is a Caterpillar dealer, and a Nevada corporation. *Id.* ¶ 8. Raptor USA is a Delaware corporation, while Raptor Mining is a Canadian corporation. *Id.* ¶ 11–12. ESCO Corp. owns U.S. Patent Nos. 7,178,274; RE43,693; 8,122,621; and 5,241,765; and ESCO Canada owns U.S. Patent No. 7,640,684. *Id.* ¶¶ 14 & 16. Plaintiffs bring five claims of patent

infringement under 35 U.S.C. § 271.  Plaintiffs allege that all Defendants are infringing all five patents, except that they do not allege that the Raptor Defendants are infringing the '765 Patent.  *See id.* ¶¶ 24–61.

## DISCUSSION

### I. Legal Standard for Retransfer

Due to the nature of decisions to transfer, and law-of-the-case doctrine, motions for retransfer are looked upon with disfavor and will not be granted in the absence of extraordinary circumstances.  Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Since "[t]he weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude," courts have broad discretion in deciding motions to transfer under § 1404(a).  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).  Because broad discretion invites "vacillation on arguable issues," the policies underlying the law-of-the-case doctrine "apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious cycle of litigation."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816–19 (1988).  Under the law-of-the-case doctrine, which applies "as much to the decisions of a coordinate court in the same case as to a court's own decisions," *id.* at 816, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Arizona v. California*, 460 U.S. 605, 618 (1983).  Therefore, a transfer decision should not be reversed by the transferee court if it "can find the transfer decision

plausible." *Christianson*, 486 U.S. at 819.

Nevertheless, the law-of-the-case doctrine "directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. at 618. Nor does it remove a court's obligation to decline to exercise jurisdiction that it does not have. *See Christianson*, 486 U.S. at 818 (finding that once the Federal Circuit concluded that the Seventh Circuit's jurisdictional determination was "clearly wrong," it was "obliged to decline jurisdiction").

Plaintiffs claim that the transfer was erroneous in two ways: first, that the Nevada court made a factual error in finding improper claims-splitting, and (2) that the transfer was erroneous because this Court cannot exercise personal jurisdiction over all of the defendants, and it is therefore not a district where this action might have been brought under § 1404(a). This Court is loathe to upset the District of Nevada's decision to transfer this case, and thereby ping-pong it back across the country. However, because the Court finds that it lacks personal jurisdiction over Cashman, it is obliged to grant Plaintiffs' motion to retransfer.

## II. Errors Alleged to Require Retransfer

### A. Claims-Splitting "Error of Fact"

Plaintiffs argue that the District of Nevada "made a manifest error of fact" in its discussion of anti-claim splitting doctrine in the transfer order. Pls.' Mem. 16–17, ECF No. 94. The Court declines to speculate about whether the Nevada court was under the impression that a prior action was still pending in Illinois, or whether it was describing the state of affairs pre-transfer and pre-consolidation. Resolution of this question does not change the result in this case because the Court already finds that retransfer is necessary, as explained below.

4

### B. Where This Action Might Have Been Brought Under Section 1404(a)

Retransfer is required here because this is not a district where this action might have been brought under § 1404(a). To determine whether an action "might have been brought" in a particular district, a court must look to the state of the world at the time of filing. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) ("[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff."). The statute contains a lone exception to this general principle in that it allows transfer "to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This exception does not apply because Plaintiffs opposed the motion to transfer. Therefore, the proper inquiry is not "where [the suit] may now be rebrought, with defendants' consent," but where the action "might have been brought." *Hoffman*, 363 U.S. at 343.

Here, the District of Nevada concluded that "[t]he Defendants in the present case could of course be heard to argue against transfer to Illinois based upon a lack of personal jurisdiction or venue, but they have all joined the present Motion." Order Granting Mot. Transfer Venue 5, ECF No. 85. Since this assumed that Defendants' waiver of personal jurisdiction and venue—implicit in their move to transfer venue—sufficed under § 1404(a), the Court must now conduct its own analysis of whether this action "might have been brought" here.

In considering where this action "might have been brought," the question is whether, at the outset, venue would have been proper and the Court would have had personal jurisdiction over Defendants. *See Hoffman*, 363 U.S. at 344. "Venue in a patent action against a corporate

defendant exists wherever there is personal jurisdiction. Therefore, no separate venue inquiry is necessary." *Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (citations omitted). Consequently, the Court need only determine whether all of the Defendants would have been subject to personal jurisdiction in order to determine if this action "might have been brought" here.

### 1. This Court Lacks Personal Jurisdiction Over at Least One Defendant

In patent infringement cases, the law of the Federal Circuit determines whether personal jurisdiction over out-of-state defendants may be properly exercised. *See, e.g.*, *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). Generally, determining personal jurisdiction is a two-step inquiry. "First, does jurisdiction exist under the state long-arm statute? Second, if such jurisdiction exists, would its exercise be consistent with the limitations of the due process clause?" *Trintec Indus.*, 395 F.3d at 1279 (citations omitted). Sometimes these steps merge "because the reach of the state long-arm statute is the same as the limits of the due process clause." *Id.* Such is the case here, because the Illinois long arm statute expressly states that personal jurisdiction over a non-resident defendant is permitted to the full extent allowed by the United States Constitution. 735 ILCS § 5/2-209(c).

To comport with due process, defendants must have "minimum contacts" with Illinois such that maintaining a lawsuit here does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Put another way, defendants must have "purposefully availed" themselves of the benefits of conducting activities in Illinois such that they should "reasonably anticipate being haled into court" here. *Worldwide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "This purposeful availment

requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted). Furthermore, "[e]ach defendant's contacts with the forum State must be assessed individually," *Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980)). It is not permissible to base personal jurisdiction on the defending parties' aggregate forum contacts. *Rush*, 444 U.S. at 331–32.

Personal jurisdiction may be "specific" or "general." A court may exercise general jurisdiction over out-of-state corporations "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).

Here, Defendants argue that this Court could have exercised both general and specific jurisdiction over all of the defendants at the time this action was commenced. The parties do not dispute this Court's ability to exercise personal jurisdiction over either of the Caterpillar Defendants. In the case of Caterpillar, Inc., there can be no dispute: as the plaintiff in the original Illinois action, Caterpillar Inc. would be subject to personal jurisdiction here even if its principal place of business were not in Illinois. For the reasons outlined below, the Court finds it plausible that it could exercise personal jurisdiction over Caterpillar Global, Raptor Mining, and Raptor USA. The Court does not find, however, that the allegations and evidence now before it establish personal jurisdiction over Cashman.

7

### a. General Jurisdiction

General jurisdiction is proper over out-of-state corporations "when their affiliations with the [forum] are so 'continuous and systematic' as to render them essentially at home." *Goodyear Dunlop*, 131 S.Ct. at 2851. Because Caterpillar, Inc.'s principal place of business is in the Central District of Illinois, the Court may exercise general jurisdiction over it. Caterpillar Global "has offices responsible for the accused products in Peoria, Illinois," so it is reasonable to infer that it is "essentially at home" in this jurisdiction. Defendants argue that the Raptor Defendants and Cashman are subject to general personal jurisdiction because "each company regularly conducts business with Caterpillar in Illinois." Defs.' Resp. 13, ECF No. 100. However, even as Defendants acknowledge that "[i]t is a well-established canon of civil procedure that personal jurisdiction of an out-of-state corporation exists where that company has 'continuous and systematic' contacts with the forum state," they fail to explain how "regularly conduct[ing] business with Caterpillar" establishes "continuous and systematic contacts." *Id.* Without more evidence, or at least an explanation of why Defendants are equating those two statements, the Court is unable to determine that any of the other out-of-state defendants are "essentially at home in the forum state." *See, e.g.*, *Goodyear*, 131 S.Ct. at 2851.

### b. Specific Jurisdiction

Defendants also argue that each Defendant is subject to specific personal jurisdiction. The Federal Circuit has developed a three-factor test to analyze specific jurisdiction: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Akro Corp.*, 45 F.3d at 1546–49. The

8

Court finds that each of the Defendants, in their dealings with Caterpillar, Inc., have "purposefully directed" activities at a resident of the forum.  Therefore, the Court will begin by considering whether the patent infringement claims arise out of or relate to each Defendant's activities in this forum.

The Supreme Court has not clearly defined the nexus necessary to satisfy the "arise out of or related to" requirement of the due process inquiry, but the Federal Circuit has noted "that it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.,* 552 F.3d 1324, 1330 (Fed. Cir. 2008) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001)).  Accordingly, the Federal Circuit describes its interpretation of the "arise out of or related to" language as "far more permissive than either the 'proximate cause' or the 'but for' analyses" adopted in other circuits.  *Id.* at 1337.  Nevertheless, a defendant's contacts and the plaintiff's claims are not "related" simply because they involve the same or similar subject matter.  *See Technolines, LP v. GST Autoleather, Inc.*, 799 F. Supp. 2d 871 (N.D. Ill. 2011) (collecting cases).  Rather, the inquiry must focus on the "relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Here, the claims at issue in the litigation are for patent infringement—in other words, some act of "mak[ing], us[ing], offer[ing] to sell, sell[ing] any patented invention" or importing such invention into the United States.  35 U.S.C. § 271(a).  Therefore, where a defendant's activities constitute such an act or acts, the claim of infringement would clearly "arise out of or relate to" those activities.  The Federal Circuit has explained that "for purposes of specific

jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum." *Avocent*, 552 F.3d at 1332.

Defendants have alleged a sufficient nexus between the patent infringement claims and the Raptor Defendants' activities. According to Defendants:

> Caterpillar and Raptor designed several of the products accused of infringement together. Many of these discussions took place in Illinois, many of the design related efforts took place in Illinois, and even the contracts which governed the design efforts were negotiated in Illinois. Consequently, the making and eventual selling and offering for sale of the accused products was planned, designed, and conducted in Illinois by both Caterpillar and Raptor.

Defs.' Resp. 15. The relationship among the Raptor Defendants, forum, and the litigation therefore appears both straightforward and strong.

Conversely, the relationship between Cashman, the forum, and the litigation is less clear-cut. Defendants argue that the relationship between Caterpillar and Cashman forms a sufficient basis for personal jurisdiction, but those Defendants' dealings with one another are only indirectly related to Plaintiffs' claims of patent infringement. Cashman's activities in the forum are specifically alleged as follows: Cashman is a Caterpillar dealer; "it has deliberately entered into contracts with Caterpillar through dealings with Caterpillar in Illinois establishing 'continuing obligations' between them and Caterpillar[; . . .] Cashman regularly communications [sic] with Caterpillar employees in Illinois, purchases equipment and parts from Caterpillar facilities and warehouses in Illinois, and attends dealer meetings and training sessions in Illinois." *Id.* at 16. Defendants argue that "ESCO's claims of patent infringement arise from Cashman's activities directed to Illinois because ESCO alleges that Cashman infringes its patents through products that it buys from Caterpillar." *Id.*

Defendants fatal error in this analysis is in failing to distinguish between buying and selling. A claim for patent infringement may be based on the latter, but the former is not enumerated in the statute. *See* 35 U.S.C. § 271. While the Federal Circuit has explained that a patent infringement claim "both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention" in the forum, this Court is aware of no cases in which a claim for patent infringement was found to "arise out of" or "relate to" the mere procurement of a claimed invention in a given forum. *See Avocent*, 552 F.3d at 1332. Therefore, it is incorrect to posit that "the products [Cashman] buys from Caterpillar in Illinois is the whole reason Cashman is subjected to ESCO's infringement claims." Defs.' Resp. 16. Cashman's *sale* of those products in Nevada and California constitute the activity by which it allegedly infringes ESCO's patents. The *purchase* of those products, though it precedes their resale in this case, is not the "whole reason Cashman is subjected to ESCO's infringement claims," *id.*, nor, in general, would a purchase be either necessary or sufficient to commit an allegedly infringing activity. Serious due process concerns could be implicated if purchasing an infringing product in a locale would subject the purchaser to specific personal jurisdiction there. The Court therefore finds that Defendants have not established that personal jurisdiction over Cashman would have been proper at the time the suit was commenced, and must consequently find that this is not a district in which the suit "might have been brought." That finding requires the Court to retransfer this case to the District of Nevada.

## CONCLUSION

Plaintiffs' Motion to Retransfer, ECF No. 93, is GRANTED. Because the Court did not require additional briefing from Plaintiffs, Plaintiffs' Motion for Leave to File Reply Brief, ECF

11

No. 103, is DENIED.  The Clerk is directed to TRANSFER this matter to the United States District Court for the District of Nevada.

Entered this 20th day of August, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
